Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/09/2023 09:08 AM CDT

## State of Nebraska, appellee, v. Gabriel R. Muratella, appellant.

___ N.W.2d ___

Filed June 9, 2023.    No. S-22-332.

1. **Judgments: Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.
2. **Motions for New Trial: Appeal and Error.** The abuse of discretion standard of review applies to appeals from motions for new trial denied after an evidentiary hearing.
3. **Postconviction: Pleas.** Whether the common-law procedure for withdrawing a plea after conviction is available presents a question of law.
4. **Motions for New Trial: Pleas.** Accepted pleas that result in an adjudgment of guilty are "verdicts of conviction" under Neb. Rev. Stat. § 29-2101 (Reissue 2016).
5. **Motions for New Trial.** To be granted a new trial, Neb. Rev. Stat. § 29-2101 (Reissue 2016) requires that the enumerated grounds materially affect the defendant's substantial rights.
6. **Postconviction: Pleas: Proof.** The unavailability of the Nebraska Postconviction Act is a material element that must be pled and proved by a defendant seeking to use the procedure for withdrawing a plea after conviction.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Chelsie E. Krell for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Gabriel R. Muratella appeals from the district court's overruling of his motion for new trial under Neb. Rev. Stat. §§ 29-2101 to 29-2103 (Reissue 2016) and his motion to withdraw his plea under our common-law procedure recognized in *State v. Gonzalez*.[1] Because Muratella failed to satisfy the requirements for such relief, we affirm.

## FACTUAL BACKGROUND

In 2019, Muratella pleaded no contest[2] and was adjudged guilty of one count of attempted delivery or possession with intent to deliver a controlled substance (methamphetamine), a Class IIA felony.[3] Muratella was sentenced to a term of imprisonment of 8 to 12 years.

The factual basis presented at Muratella's plea hearing included that an officer observed an unknown male ask a shipping store clerk for an earbud case and that when the officer identified himself as law enforcement, the unknown male left the area. The officer then opened the earbud case and observed what he immediately identified as suspected methamphetamine. The officer obtained a preliminary weight of the suspected methamphetamine of approximately 18 grams, which in the officer's experience would be more consistent with dealer quantities than that of methamphetamine users. The officer conducted a field test, and the suspected methamphetamine yielded a positive result for methamphetamine. After conducting research, the officer identified Muratella as the unknown male.

---

[1] *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013).

[2] See Neb. Rev. Stat. § 29-1819.01 (Reissue 2016).

[3] See Neb. Rev. Stat. §§ 28-416 and 28-201 (Cum. Supp. 2022).

The State's factual basis also included that Muratella told his probation officer that "the methamphetamine belonged to a friend" and that he went to retrieve the earbud case "after the friend told him that drugs were contained in the case." The crime laboratory for the Nebraska State Patrol (NSP) later tested the suspected methamphetamine found in the earbud case, which was confirmed as methamphetamine with a total net weight of 16.636 grams.

In 2022, in response to the indictment of NSP evidence technician Anna Idigima,[4] Muratella applied for a new trial on six enumerated grounds under § 29-2101 and moved to withdraw his plea. The district court held a hearing on both motions. In support of his motions, Muratella offered, and the court received, an affidavit from his counsel, a chain of custody report for the seized substance, a copy of Idigima's indictment, and an NSP report regarding the seized substance.

The affidavit set forth that Muratella learned that Idigima was federally indicted as a result of an investigation into the theft and distribution of drugs that she had access to during the course and scope of her employment duties at the NSP crime laboratory. Muratella first received notice of Idigima's involvement in his case in November 2021 and immediately commenced discussions with the State to discover the extent and effect of Idigima's conduct on his case. In early January 2022, Muratella received an NSP chain of custody report for the seized methamphetamine from the State. The parties agreed that Idigima "was in the direct line of the chain of custody and a necessary and material witness" in the State's case. It was the State's "understanding" that the methamphetamine evidence was not missing and remained in NSP custody. The affidavit also set forth that Muratella would not have

---

[4] See, also, *State v. Osborne*, 313 Neb. 726, 986 N.W.2d 65 (2023) (holding absence of testimony by Idigima was not fatal to establishing chain of custody); *State v. Blocher*, 313 Neb. 699, 986 N.W.2d 275 (2023) (holding generalized statement in abstract about effect of misconduct by Idigima in chain of custody insufficient to warrant new trial).

pleaded no contest had he known about the issue regarding the chain of custody due to Idigima's indictment.

The chain of custody report showed that Idigima was responsible for the seized methamphetamine in Muratella's case. Idigima's indictment showed she was indicted related to the distribution and possession with intent to distribute controlled substances "[b]eginning on or about June 1, 2021, and continuing to on or about September 23, 2021 . . . ." The NSP report showed that the officer who recovered the earbud case submitted the contents to the NSP crime laboratory for weighing and identification and that the laboratory confirmed the substance to be methamphetamine.

Muratella argued that six separate grounds set forth in § 29-2101 warranted the grant of a new trial. In sum, Muratella asserted that the chain of custody issue amounted to (1) an irregularity in the proceedings of the witnesses for the State, which prevented him from having a fair trial;[5] (2) misconduct of a witness for the State;[6] (3) surprise which ordinary prudence could not have guarded against;[7] (4) an insufficiency of evidence that did not sustain the verdict;[8] and (5) newly discovered evidence material to the State's case, the full extent of which cannot be known.[9] Muratella also asserted that (6) the acceptance of his plea amounted to an error of law.[10]

In addition, Muratella argued that he satisfied the requirements to withdraw his plea of no contest because his plea was not made voluntarily, knowingly, or intelligently. Muratella asserted that when he entered his plea, he believed the State could prove its case against him and was unaware that neither the chain of evidence nor sufficient foundation

---

[5] See § 29-2101(1).

[6] See § 29-2101(2).

[7] See § 29-2101(3).

[8] See § 29-2101(4).

[9] See § 29-2101(5).

[10] See § 29-2101(7).

could be established for the evidence to be received at a trial. Muratella contended that "[a] constitution[al] right or rights [were] at issue, i.e., due process among others."

The State did not oppose either of Muratella's motions. The State did not dispute that Idigima was solely responsible for the custody and control of the seized methamphetamine and that she would be a material and necessary witness for the State to establish a chain of custody for the evidence to be admissible at trial.

The district court issued an order overruling Muratella's motions. Regarding his motion for new trial, the court noted a potential inconsistency in our case law.[11] Still, it reasoned that defendants who pleaded guilty or no contest could not move for a new trial because they waived all defenses to the charged crime and their right to trial. In the alternative, the district court determined that Muratella's motion for a new trial failed on its merits because the newly discovered evidence related to Idigima amounted only to impeachment evidence. The court did not address the other grounds that Muratella asserted warranted him a new trial.

In overruling Muratella's motion to withdraw his plea, the court determined that Muratella did not make the requisite showings that we have held are necessary precursors to withdrawing a plea under our common-law procedure. The district court concluded that under that framework, Muratella was not entitled to withdraw his plea because he failed to show why the Nebraska Postconviction Act was unavailable to him.

Muratella timely filed a notice of appeal for both motions. Before filing his brief on appeal, Muratella filed a motion

---

[11] Compare *State v. Kluge*, 198 Neb. 115, 251 N.W.2d 737 (1977) (stating motion for new trial on ground of newly discovered evidence is not appropriate where defendant has entered plea of guilty or no contest), *disapproved on other grounds, State v. Minshall*, 227 Neb. 210, 416 N.W.2d 585 (1987), with *State v. Daly*, 227 Neb. 633, 634, 418 N.W.2d 767, 769 (1988) (stating entered judgment of conviction based on accepted guilty plea constitutes "verdict of conviction").

for leave to proceed in forma pauperis on appeal. Muratella's former counsel filed a motion to withdraw as his counsel. The district court sustained both motions and appointed Muratella counsel on appeal. We moved his appeal to our docket.[12]

## ASSIGNMENTS OF ERROR

Muratella assigns, renumbered and restated, that the district court erred in (1) overruling his motion for a new trial and (2) overruling his motion to withdraw his plea of no contest. Additionally, Muratella assigns that (3) if the proper avenue for relief was under the Nebraska Postconviction Act, his counsel was ineffective for failing to seek such relief.

## STANDARD OF REVIEW

[1] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.[13]

[2] The abuse of discretion standard of review applies to appeals from motions for new trial denied after an evidentiary hearing.[14] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[15]

[3] Whether the common-law procedure for withdrawing a plea after conviction, recognized in *State v. Gonzalez*,[16] is available presents a question of law.[17]

---

[12] See, Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022); Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

[13] *State v. Moore*, 312 Neb. 263, 978 N.W.2d 327 (2022).

[14] *State v. Cross*, 297 Neb. 154, 900 N.W.2d 1 (2017).

[15] *State v. Worthman*, 311 Neb. 284, 971 N.W.2d 785 (2022).

[16] *State v. Gonzalez, supra* note 1.

[17] *State v. Jerke*, 302 Neb. 372, 923 N.W.2d 78 (2019).

## ANALYSIS

### New Trial

Muratella makes two arguments in support of his assignment that the district court erred in overruling his motion for new trial. First, he argues that he was not precluded from applying for a new trial under § 29-2101 due to his plea of no contest. Muratella also argues that his motion was supported by more than just newly discovered impeachment evidence. The State disagrees and instead contends that Muratella could not move for a new trial because he did not have a trial in the first instance. In addition, the State concedes that Muratella moved for a new trial on several grounds under § 29-2101 but contends that "the sole factual basis for the motion was the alleged newly discovered evidence regarding Idigima."[18]

The grounds for a new criminal trial are governed by § 29-2101, which states:

> A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following grounds affecting materially his or her substantial rights: (1) Irregularity in the proceedings of the court, of the prosecuting attorney, or of the witnesses for the state or in any order of the court or abuse of discretion by which the defendant was prevented from having a fair trial; (2) misconduct of the jury, of the prosecuting attorney, or of the witnesses for the state; (3) accident or surprise which ordinary prudence could not have guarded against; (4) the verdict is not sustained by sufficient evidence or is contrary to law; (5) newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial; (6) newly discovered exculpatory DNA or similar forensic testing evidence obtained under the DNA Testing Act; or (7) error of law occurring at the trial.

---

[18] Brief for appellee at 12.

[4] We have long recognized that when a guilty or no contest plea is accepted and the court enters a judgment of conviction thereon, that is a "verdict of conviction" for the purposes of a motion for a new trial.[19] In Nebraska, historically, a defendant who entered a plea of guilty or no contest was, in most cases, required to file an application for new trial for any assignments of error to be considered on direct appeal.[20] But in 1982, the Legislature modified our treatment of a motion for new trial as a prerequisite to appellate review.[21] Despite those changes, the Legislature did not amend, nor has it since, the meaning of "verdict of conviction" under § 29-2101. Where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent.[22] Accordingly, we adhere to that precedent and continue to recognize that accepted pleas that result in an adjudgment of guilty are "verdicts of conviction" under § 29-2101.

[5] Although Muratella is not precluded from applying for a new trial because of his no contest plea, his plea does affect the determination of whether a new trial should be

---

[19] See *State v. Daly, supra* note 11. See, also, e.g., *State v. Beans*, 199 Neb. 807, 261 N.W.2d 749 (1978) (plea of guilty); *State v. Svoboda*, 194 Neb. 663, 234 N.W.2d 901 (1975) (plea of no contest); *State v. Banse*, 184 Neb. 534, 169 N.W.2d 294 (1969) (plea of no contest); *State v. Hylton*, 175 Neb. 828, 124 N.W.2d 230 (1963) (plea of no contest); *Wolff v. State*, 172 Neb. 65, 108 N.W.2d 410 (1961) (plea of guilty).

[20] See, e.g., *State v. Price*, 198 Neb. 229, 252 N.W.2d 165 (1977) (plea of guilty); *State v. Griger*, 190 Neb. 405, 208 N.W.2d 672 (1973) (plea of guilty).

[21] See 1982 Neb. Laws, L.B. 720, § 1 (codified at Neb. Rev. Stat. § 25-1912.01 (Reissue 2016)). See, also, *State v. Wright*, 220 Neb. 847, 374 N.W.2d 26 (1985). Accord, *State v. Turner*, 221 Neb. 132, 375 N.W.2d 154 (1985); *State v. Potter*, 220 Neb. 866, 374 N.W.2d 27 (1985).

[22] *State v. Webb*, 311 Neb. 694, 974 N.W.2d 317 (2022). See *State v. Chapman*, 307 Neb. 443, 949 N.W.2d 490 (2020) (adhering to construction of speedy trial statutes).

granted. To be granted a new trial, the plain language of § 29-2101 requires that the enumerated grounds materially affect the defendant's substantial rights. When entering a plea of guilty or no contest, a criminal defendant waives various rights. For example, as we have repeatedly held, the voluntary entry of a guilty plea or a plea of no contest waives every defense to the charged crime.[23] For that reason, we have said that a motion for new trial on the ground of newly discovered evidence is not appropriate where a defendant has entered a plea of guilty or no contest.[24] Further, we note that the plain language of § 29-2101 limits the applicability of certain enumerated grounds to those cases where a trial occurred.

We need not address the applicability of each ground asserted by Muratella to resolve this appeal because Muratella has failed to show how Idigima's indictment materially affected his substantial rights. Muratella contends that his right to trial by jury was compromised because Idigima's indictment destroyed the chain of custody for the seized methamphetamine. We find no merit to Muratella's contention that Idigima's presence in the chain of custody of the methamphetamine evidence would have materially affected his substantial rights, even if a trial occurred after her indictment.

As we recently discussed in *State v. Osborne*,[25] our precedent does not require that every person who has played a role in the chain of custody must testify. In determining the admissibility of physical evidence, the focus is on whether the complete chain of custody has been established and whether it has been shown to the satisfaction of the court that the object is in substantially the same condition as it was at the relevant time and that no substantial change has taken place in the evidence so as to render it misleading.[26] Based on the record

---

[23] See *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

[24] See *State v. Kluge, supra* note 11.

[25] *State v. Osborne, supra* note 4.

[26] See *id.*

before us, we cannot say that the absence of testimony by Idigima would have been fatal to the establishment of the chain of custody in Muratella's case.

Insofar as Muratella contends that Idigima's indictment results in a deficient factual basis for his plea, the factual basis shows ample other evidence of Muratella's guilt to support his conviction. Nothing Muratella asserted in his affidavit has any bearing on the officer's testimony that Muratella attempted to obtain the earbud case, the officer's identification of the methamphetamine, its preliminary weight, the positive field test, or the admissions Muratella made to his probation officer.

Further, to the extent Muratella asserts he had a right to know of the chain of custody issue when he entered his plea, he has failed to point us to any authority supporting his entitlement to know of Idigima's future indictment. When a plea is entered in anticipation of trial, no criminal defendant, prosecutor, or trial judge knows the precise evidence that would be introduced at a future trial. We are not persuaded that Muratella had a right to know of future events in this case.[27] Moreover, Muratella has failed to show, or even suggest, how Idigima's actions "[b]eginning on or about June 1, 2021," for which she was indicted, would have had any bearing on his case when Muratella entered his plea in 2019.

Because Muratella failed to show that his substantial rights were materially affected, we conclude that the district court did not abuse its discretion when it denied Muratella's application for a new trial under § 29-2101.

## Withdrawal of Plea and Ineffective Assistance of Counsel

Nebraska recognizes a common-law procedure for a criminal defendant to withdraw an entered plea.[28] This procedure

---

[27] Cf. *State v. Bartel*, 308 Neb. 169, 953 N.W.2d 224 (2021); *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002).

[28] See *State v. Gonzalez, supra* note 1.

exists to safeguard a defendant's rights in the very rare circumstance where due process principles require a forum for the vindication of a constitutional right and no other forum is provided by Nebraska law.[29] Accordingly, the common-law procedure for withdrawing a plea after conviction is available only when (1) the Nebraska Postconviction Act is not, and never was, available as a means of asserting the ground or grounds justifying withdrawing the plea and (2) a constitutional right is at issue.[30]

[6] The unavailability of the Nebraska Postconviction Act is a material element that must be pled and proved by a defendant seeking to use the procedure for withdrawing a plea after conviction recognized in *State v. Gonzalez*.[31] If a defendant has a collateral attack that could be asserted under the act, that act is his or her sole remedy.[32] Only if a defendant does not assert and never could have asserted the basis of his or her collateral attack under the act may he or she invoke the common-law procedure and move to withdraw a plea after the conviction has become final.[33]

The record shows, and Muratella seems to concede on appeal, that he failed to plead and prove that the Nebraska Postconviction Act was unavailable to him. Therefore, the district court correctly concluded that Muratella's motion to withdraw his plea should be denied. Muratella's second assignment of error is without merit.

Finally, Muratella requests that we find his "trial" counsel, or more appropriately, his motion counsel, was ineffective for seeking to withdraw his plea rather than pursuing relief under the Nebraska Postconviction Act. But this is not a direct appeal wherein ineffective assistance of counsel claims

---

[29] *Id.*

[30] *State v. Jerke, supra* note 17; *State v. Gonzalez, supra* note 1.

[31] *State v. Jerke, supra* note 17. See *State v. Gonzalez, supra* note 1.

[32] *State v. Jerke, supra* note 17; *State v. Gonzalez, supra* note 1.

[33] *Id.*

must be preserved or lost. Muratella's appeal from the overruling of his post-direct-appeal motion to withdraw his plea is not the appropriate forum for him to allege a claim of ineffective assistance of counsel for the first time. Hence, we decline to opine further on this assignment of error.

## CONCLUSION

Because Muratella failed to satisfy the requirements for a new trial under § 29-2101 and the common-law procedure for withdrawing a plea after conviction, we affirm the order of the district court overruling his motions.

Affirmed.